UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| THERESA DOE, parent and legal guardian for M.D., a minor,<br><br>Plaintiff,<br><br>v.<br><br>GRAYS HARBOR COUNTY, a municipality; GERALD MURPHY, GREG REYNVAAN, and JOHN and JANE DOES, in their individual capacity;<br><br>Defendants. | No.<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF UNDER 42 U.S.C. § 1983 |

## I. NATURE OF THE CASE

1.1.     Plaintiff M.D., now age 16, was detained repeatedly over the last four years in the custody of the Grays Harbor County Juvenile Detention Facility ("Detention Facility"), largely for minor probation violations. Throughout these episodic stints in juvenile detention, staffers at the Detention Facility routinely placed Plaintiff in solitary confinement, pursuant to Defendant Grays Harbor County's ("the County") policies and practices about using "cell confinement," "24, 48, or 72 hour lock," or "isolation."

1.2.     Under the Fourteenth Amendment to the U.S. Constitution, juvenile detainees may be placed in solitary confinement only in extreme circumstances, such as to control violent offenders who present imminent risks to themselves or others. Under the Eighth Amendment,

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

kc131401

1     juveniles may not be subjected to cruel and unusual punishment and are treated categorically

2     different from adults.

3         1.3.      Despite those constitutional protections for youth, the County regularly resorts to

4     solitary confinement to sanction common forms of teenage misbehavior, such as talking back,

5     passing notes, yelling, using profanity, and other everyday non-threatening conduct. The County

6     does so both pursuant to official written policy that fails to comply with basic constitutional

7     requirements, and long-standing practices that permit the routine and flagrant violation of even

8     its own official written policies.

9         1.4.      Under County policies and practices, Plaintiff was put into solitary confinement

10     over forty times between 2013 and April 2016 for various minor rule violations, for over 75 days

11     in aggregate.

12         1.5.      Under County policies and practices, Defendant Gerald Murphy, the Detention

13     Facility Director, put Plaintiff in solitary confinement in a filthy padded cell for eight (8) days in

14     March 2016, after notifying Defendant Greg Reynvaan, Juvenile Court Administrator.

15         1.6.      During this period of solitary confinement, Plaintiff was given only peanut butter

16     and jelly sandwiches to eat.

17         1.7.      On March 28, 2016, after news of Plaintiff's solitary confinement appeared in the

18     press, the Honorable David L. Edwards, Superior Court Judge and Presiding Judge in the Grays

19     Harbor Juvenile Court, notified Mr. Reynvaan and Mr. Murphy that they were being

20     reprimanded.  In his letter of reprimand, Judge Edwards noted "a detainee at the juvenile facility

21     was put into solitary confinement for an extended period of time and restricted of food and

22     bedding," and that "this type of discipline is unacceptable and will not be tolerated."  Judge

23     Edwards suspended them each without pay for 7 days and 30 days, respectively.

24         1.8.      Despite sanctioning Mr. Reynvaan and Mr. Murphy for their roles in keeping

25     Plaintiff in solitary confinement for so long, and despite receiving days earlier the prosecution's

26     motion seeking Plaintiff's release from the Detention Facility, Plaintiff was not released until

27     April 27, 2016.

COMPLAINT - 2

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1.9.    Theresa Doe, parent and legal guardian for her minor son, M.D., brings suit under 42 U.S.C. § 1983, on Plaintiff M.D.'s behalf, seeking compensation for constitutional injuries and associated emotional distress that resulted from Plaintiff's unwarranted detention in solitary confinement for approximately 75 days in toto, in addition to declaratory and injunctive relief to halt the County's unconstitutional policy and practice of placing juveniles in solitary confinement as a tool to manage behavior.

## II.    PARTIES

2.1    Plaintiff M.D. is a minor citizen of the State of Washington and a resident of Grays Harbor County.  Theresa Doe is the parent and legal guardian for M.D., for whom this suit is brought.

2.2    Defendant Greg Reynvaan, Juvenile Court Administrator, had at all material times overall supervisory authority of the Grays Harbor County Juvenile Detention Facility and was acting under color of law.

2.3    Defendant Gerald Murphy was at all material times the Detention Facility Director and acting under color of law.

2.4    Defendant Grays Harbor County ("the County") is a county within the State of Washington.  The Grays Harbor County Juvenile Court Services is a municipal agency within the County that acts in its administrative capacity to operate the Grays Harbor County Juvenile Detention Facility.

2.5    John and Jane Does are unidentified staffers of the Grays Harbor County Juvenile Detention Facility who placed Plaintiff in solitary confinement between 2013 and 2016 and at all material times were acting under color of law.

## III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.2    Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the

COMPLAINT - 3

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

events and omissions giving rise to the claims alleged herein occurred within the Western

District of Washington.

## IV.  FACTUAL ALLEGATIONS

**4.1.    The County has an official written policy of placing juveniles in solitary confinement for ordinary misbehavior.**

4.1.1    Defendant County operates the Grays Harbor County Juvenile Detention Facility

pursuant to the Facility's Policy Manual.

4.1.2    Chapter Seven of the Policy Manual sets forth the County's rules that govern the

conduct of the youths who are detained and establishes corrective actions Facility staff may take

in the event of minor infractions and major infractions, including "[r]oom confinement 24hr,

48hr, and 72hr." *See* Policy Manual, chap. 7.1-7.2.

4.1.3    Minor violations are "considered to be minor misbehaviors but may become

major depending upon the youth's attitude and response to staff intervention."  Policy Manual,

chap. 7.2.II.B.  These include: "(a) not following directions, (b) verbal argument/outburst, (c)

horseplay, (d) present in unauthorized areas, (e) uncooperative with staff; (f) verbal disrespect;

(g) non-performance of work assignment; and (h) note passing," among "other just causes."

4.1.4    The County policy allows staff to impose "sanctions" on youth for minor

violations, on a progressive basis, up to and including "Room Lock: youth is restricted to their

cell for a period of 24 hours." Policy Manual, chap. 7.2.II.B.2(d).

4.1.5    Major violations "are deemed unsafe; a threat to staff, youth, and the safety and

security of the Detention Facility. Violation of these rules results in extended cell confinement

and a potential loss of good time." Policy Manual, chap. 7.2.II.C.1.  Major violations include:

(a) assault; (b) fighting where one is the primary aggressor; (c) escapes and attempted escapes;

(d) possession of contraband, including drugs, weapons, cigarettes, and lighters; (e) active

fighting or resistance to staff putting youth in physical restraint; (f) "[i]nappropriate sexual

behavior – [i]ntentional and purposeful touching of a sexual nature of the body"; (g) "[f]ailure to

follow the 'Clear the Floor' and 'Drop Position' directives"; (h) damage to one's mattress or the

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

building; (i) behavior that puts oneself or others "at harm"; and (j) "[c]omments of physical harm toward staff o[r] other youth."

4.1.6    The Policy Manual provides that "review of the privilege loss with the youth will take place by the Shift Supervisor on the shift following the events leading to privilege loss." Chap. 7.2.II.B.2(d).  The Manual states that it is "incumbent upon Detention Staff giving the consequence to communicate to the Shift Supervisor or Detention Director the necessity for the review through a written Incident Report."  Any loss of privileges mandated at this level requires that youth "are to be out of their cells a minimum of 1 hour each day of privilege loss."

4.1.7    The Policy Manual identifies as "Major Rule Infractions" the following: (a) "Slurs pertaining to Race, Ethnicity, Gender, or Sexual Orientation"; (b) "Threats to the health and safety of staff"; (c) "Possession of Contraband"; and (d) "Property Damage."  Chap. 7.2.II.D.  The Policy affords Detention Staff "discretion in terms of determining the actual consequence depending on the circumstances of the infraction.  However, the range of consequences includes up to 72-hour privilege loss with no school depending on the nature and severity of the event and the youth involved."

4.1.8    Corrective action, including cell confinement for 24 to 72 hours, may not include "[d]enial of regular meals" or "[d]enial of contact with parents or legal guardians." Policy Manual, chap. 7.2.II.D.

4.1.9    In the event of "multiple, continuous minor rule violations or rule violations that are a serious threat to the security of the Detention Facility," the Policy Manual provides for the following methods for Detention Staff to resolve minor infractions, with approval by the Shift Supervisor: "move [youth] to a padded room," "[r]emove privileges," and "[p]lace on cell confinement," or "Room Lock."

4.1.10  For major rule violations "or a series of lesser violations," County policy allows a shift supervisor to classify a youth for "room confinement."  Policy Manual, chap. 7.4.II.  The Shift Supervisor must review daily any room confinement.

COMPLAINT - 5

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1    4.1.11  County policy provides: "Youth who engage in a Major Rule Violation or exhibit

2    extreme threatening or destructive behavior may be placed on No Privilege status or on room

3    restriction (padded room or other room) for observation for up to 72 hours to minimize the

4    possibility for physical contact with other youth or staff members." Policy Manual, chap. 7.5.I.A.

5    4.1.12  Under County policy "[a]ny room confinement over 24 hours requires a formal

6    review." Policy Manual, chap. 7.5.II.B.

7    4.1.13  Under County policy, the Detention Facility uses a "Padded Room" to "segregate

8    youth who are engaging in disruptive behavior or are an imminent risk to themselves or others

9    and require constant and continuous visual supervision."  Policy Manual, chap. 7.5.II.D.

10    4.1.14  The Policy Manual characterizes "use of room restriction" as "an immediate

11    measure to control and observe a youth and not a form of punishment." Policy Manual, chap.

12    7.5.III.A.1.

13    4.1.15  When a youth is placed on room restriction per County policy, "there must be

14    reasonable cause to believe that failure to do so would present:  (a) Conduct which threatens

15    immediate physical harm to self or others[;] (b) A threat of imminent self-harm (Suicide Level 1

16    or 2)[;] An immediate threat of escape for only so long as the intent to escape persists[;] An

17    immediate or continued threat of destruction to property as evidenced by past behavior[;]

18    Conduct seriously disruptive to the security, order and discipline of the facility[;] [or]

19    Engagement in a Major Rule Violation that is a threat to the safety and security of the Detention

20    staff and its youth." Policy Manual, chap. 7.5.III.A.3.

21    4.1.16  When the Detention Facility places a youth in "room confinement," staff must

22    allow for "[o]ne hour of supervised time out of room during each 24 hour period to consist of

23    large muscle exercise." Policy Manual, chap. 7.5.III.A.3(g).  Otherwise, during the time of room

24    confinement, Detention Staff must check on the youth once every 30 minutes.  Policy Manual,

25    chap. 7.5.III.A.9.

26

27

COMPLAINT - 6

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1    4.1.17  County policy "authorize[s]" Detention Staff to "use the padded room when a

2    youth is actively attempting to harm him/herself or attempting suicide." Policy Manual, chap.

3    7.5.III.D.  Per policy, confinement in the "Padded Room" "will not be used as punishment."

4    4.1.18  The County's use of "room confinement," "room restriction," "Room Lock," "24-

5    hour lock," "23/1 room confinement," and other similar types and characterizations of segregated

6    detention are forms of solitary confinement or isolation of juvenile detainees.

7    4.1.19  The County's use of "Padded Room" placement is a form of solitary confinement

8    or isolation of juvenile detainees.

9    4.1.20  Despite claims that the County does not use "room confinement" or placement in

10   the Padded Room as forms of punishment, there is a pattern and practice known and tolerated

11   among County staff and supervisors that such forms of solitary confinement are meted out as

12   punitive sanctions.

13   **4.2**   **Defendants have repeatedly placed Plaintiff in solitary confinement for**
         **ordinary, non-threatening misbehavior, often in violation of the County's**
14       **policies that are already unconstitutional.**

15   4.2.1   Plaintiff, M.D., now age 16, has been a detainee at Grays Harbor County Juvenile

16   Detention Facility periodically since he was confined there for the first time in 2013 and

17   thereafter, pursuant to "At Risk Youth Petitions" and minor probation violations.  The ordered

18   duration for each period of detention was usually 30 days, with Plaintiff serving fewer days than

19   ordered.  On two occasions, Plaintiff was ordered to serve longer periods—one 60-day period

20   and one 120-day period.  For each of these longer periods of detention, Plaintiff also served

21   fewer days than the ordered number of days.

22   4.2.2   Plaintiff was released from the Detention Facility last on April 27, 2016.

23   4.2.3   During the period of episodic juvenile detention from 2013 to 2016, the County

24   repeatedly subjected Plaintiff to "room confinement," "room restriction," "Room Lock," and

25   "Padded Room" placement—all forms of solitary confinement or isolation of juvenile

26   detainees—under circumstances that are unjustified and contrary to protections guaranteed by

27   the Eighth and Fourteenth Amendments.

COMPLAINT - 7

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

4.2.4    On November 20, 2013, Plaintiff was placed in "24 hour lock for talking with [another youth] to Head Trustee [sic] while she was picking up toothbrushes," according to the Individual Detention Report completed by an unidentifiable staff member.

4.2.5    The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation, and does not appear to match the criteria for either category as set forth in Chapter 7.2 of the Policy Manual.

4.2.6    Even assuming there was some minor rule violation, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.7    On July 2, 2014, Plaintiff was placed on "24 hour lock" because Plaintiff spilled water that "pooled under the door" to his room.  A later note on the Individual Detention Report states that "parent called – informed that [Plaintiff] will not have a visit this evening because of 24 lock."

4.2.8    The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation, and does not appear to match the criteria for either category as set forth in Chapter 7.2 of the Policy Manual.

4.2.9    Even assuming there was some minor rule violation, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.  The County staffer exacerbated the unjustifiable use of solitary confinement by denying Plaintiff a scheduled parental visit contrary to Chapter 7.3.II.8 of the Policy Manual.

4.2.10  On August 7, 2014, Plaintiff was placed on "24 hour lock for inappropriate conversation" with another youth in which they allegedly said that a staff member's "wife is hot," and "one of them said he knew where [staff member] lived," according to the Individual Detention Report completed by an unidentifiable staff member.

COMPLAINT - 8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1     4.2.11 The purported reason for solitary confinement does not specify whether this was

2 for a minor or major rule violation, and doesn't appear to match the criteria for either category as

3 set forth in Chapter 7.2 of the Policy Manual.

4     4.2.12 Even assuming there was some minor rule violation, the staff member does not

5 explain how this incident was part of any "multiple, continuous minor violations or rule

6 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

7 Room Lock under Chapter 7.3.III.M of the Policy Manual.

8     4.2.13     On August 10, 2014, Plaintiff was placed on "24 hour lock for being rude and

9 inappropriate in church during prayer," according to the Individual Detention Report completed

10 by an unidentifiable staff member.

11     4.2.14 The purported reason for solitary confinement does not specify whether this was

12 for a minor or major rule violation. To the extent this incident arguably concerned a violation of

13 the minor rule against "verbal disrespect" or some other minor infraction, the staff member does

14 not explain how this incident was part of any "multiple, continuous minor violations or rule

15 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

16 Room Lock under Chapter 7.3.III.M of the Policy Manual.

17     4.2.15 On August 21, 2014, Plaintiff was placed on "24 hour lock for talking to [female

18 youth] while she was picking up toothbrushes, was trying to pass note to [another female

19 youth]," according to the Individual Detention Report completed by an unidentifiable staff

20 member.

21     4.2.16 The purported reason for solitary confinement does not specify whether this was

22 for a minor or major rule violation. To the extent this incident arguably concerned a violation of

23 the minor rule against "note passing" or some other minor infraction, the staff member does not

24 explain how this incident was part of any "multiple, continuous minor violations or rule

25 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

26 Room Lock under Chapter 7.3.III.M of the Policy Manual.

27

COMPLAINT - 9

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

kc131401

1    4.2.17  On August 25, 2014, Plaintiff was placed on "24 lock for talking about

2    drugs/alcohol during rec on dayroom floor," according to the Individual Detention Report

3    completed by unidentifiable staff member.  The County staffer noted that "Mom was informed . .

4    . that [Plaintiff] lost visit tonite [sic]."

5    4.2.18  The purported reason for solitary confinement does not specify whether this was

6    for a minor or major rule violation, and doesn't appear to match the criteria for either category as

7    set forth in Chapter 7.2 of the Policy Manual.

8    4.2.19  Even assuming there was some minor rule violation, the staff member does not

9    explain how this incident was part of any "multiple, continuous minor violations or rule

10   violations that are a serious threat to the security of the Detention Facility," so as to warrant a

11   Room Lock under Chapter 7.3.III.M of the Policy Manual.

12   4.2.20  The County staffer exacerbated the unjustifiable use of solitary confinement by

13   denying Plaintiff a scheduled parental visit contrary to Chapter 7.3.II.8 of the Policy Manual.

14   4.2.21  On September 27, 2014, Plaintiff was placed on "24 lock" after staff discovered

15   "wet paper and a torn book" in Plaintiff's room and noted that Plaintiff "cussed at me,"

16   according to the Individual Detention Report completed by staff member named "Cheri."

17   4.2.22  The purported reason for solitary confinement does not specify whether this was

18   for a minor or major rule violation, and doesn't appear to match the criteria for either category as

19   set forth in Chapter 7.2 of the Policy Manual.

20   4.2.23  To the extent this incident arguably concerned a violation of the minor rule

21   against "verbal disrespect" or some other minor infraction, the staff member does not explain

22   how this incident was part of any "multiple, continuous minor violations or rule violations that

23   are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under

24   Chapter 7.3.III.M of the Policy Manual.

25   4.2.24  On October 2, 2014, Plaintiff was placed on "24 lock . . . for stashing extra books

26   under his sink," according to the Individual Detention Report completed by an unidentifiable

27   staff member.

COMPLAINT - 10

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1    4.2.25  The purported reason for solitary confinement does not specify whether this was

2  for a minor or major rule violation, and doesn't appear to match the criteria for either category as

3  set forth in Chapter 7.2 of the Policy Manual.

4    4.2.26  Even assuming there was some minor rule violation, the staff member does not

5  explain how this incident was part of any "multiple, continuous minor violations or rule

6  violations that are a serious threat to the security of the Detention Facility," so as to warrant a

7  Room Lock under Chapter 7.3.III.M of the Policy Manual.

8    4.2.27  On December 29, 2014, Plaintiff was placed on "24 lock for laughing, talking,

9  joking with [another youth] in hall while going back with toothbrush," according to the

10  Individual Detention Report completed by an unidentifiable staff member.  The County staffer

11  also noted "[p]hone call to Mom was informed - [Plaintiff] lost visit tonite [sic]."

12    4.2.28  The purported reason for solitary confinement does not specify whether this was

13  for a minor or major rule violation, and doesn't appear to match the criteria for either category as

14  set forth in Chapter 7.2 of the Policy Manual.  Even though Plaintiff had been "previously

15  warned" about such purported misconducted, and assuming there was some minor rule violation,

16  the staff member does not explain how this incident was part of any "multiple, continuous minor

17  violations or rule violations that are a serious threat to the security of the Detention Facility," so

18  as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

19    4.2.29  The County staffer exacerbated the unjustifiable use of solitary confinement by

20  denying Plaintiff a scheduled parental visit contrary to Chapter 7.3.II.8 of the Policy Manual.

21    4.2.30  On January 9, 2015, Plaintiff was placed on "24 lock for talking down hallway

22  after rec and proceeding to use profanity once after told about lock," according to the Individual

23  Detention Report completed by an unidentifiable staff member.

24    4.2.31  The purported reason for solitary confinement does not specify whether this was

25  for a minor or major rule violation, and doesn't appear to match the criteria for either category as

26  set forth in Chapter 7.2 of the Policy Manual.

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

4.2.32  To the extent this incident arguably concerned a violation of the minor rule against "verbal disrespect" or some other minor infraction, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.33  On January 22, 2015, Plaintiff was placed on "23/1 for continually being told by staff to change his attitude (i.e., yelling out door, slamming toothbrush, and not listening to staff)," according to the Individual Detention Report completed by an unidentifiable staff member.

4.2.34  The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation.  To the extent this incident arguably concerned a violation of the minor rule against being "uncooperative with staff" or some other minor infraction, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.35  On January 23, 2015, Plaintiff was placed on "23/1" for yelling profanity, according to the Individual Detention Report completed by an unidentifiable staff member.

4.2.36  The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation, and doesn't appear to match the criteria for either category as set forth in Chapter 7.2 of the Policy Manual.

4.2.37  To the extent this incident arguably concerned a violation of the minor rule against "verbal disrespect" or some other minor infraction, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.38  On February 6, 2015, Plaintiff was placed on 24-hour room confinement for the following reason noted on the Individual Detention Report by an unidentifiable staff member:  "I

COMPLAINT - 12

asked him to be quiet and he was burping in the hall.  He started talking back to me.  I told him to stop and be quiet.  He said 'what the fuck ever.'"

4.2.39  The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation.  To the extent this incident arguably concerned a violation of the minor rule against "verbal disrespect" or some other minor infraction, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.40  On March 26, 2015, Plaintiff was placed on 24-hour room confinement for the following reason noted on the Comment Sheet by an unidentifiable staff member:  "While [another youth] was handing out the snacks . . . he went past [Plaintiff's] room.  [Plaintiff] yelled down the hall that he was allergic to peanuts. . . . [Plaintiff] [later] started loudly asking everyone in A Wing how their peanuts tasted, and saying my peanuts tasted great.  [Plaintiff] was obviously referring to the word penis."

4.2.41  The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation.  To the extent this incident arguably concerned a violation of the minor rule against "verbal disrespect," "verbal argument/outburst," or some other minor infraction, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.42  On March 29, 2015, Plaintiff was placed on "24 hr for kicking over a backpack in the classroom after church," according the Comment Sheet completed by an unidentifiable staff member.

4.2.43  The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation, and doesn't appear to match the criteria for either category as set forth in Chapter 7.2 of the Policy Manual.

COMPLAINT - 13

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1    4.2.44  Even assuming there was some minor rule violation, the staff member does not

2    explain how this incident was part of any "multiple, continuous minor violations or rule

3    violations that are a serious threat to the security of the Detention Facility," so as to warrant a

4    Room Lock under Chapter 7.3.III.M of the Policy Manual.

5    4.2.45  On March 31, 2015, Plaintiff was placed on 24-hour room confinement for the

6    following reason noted on the Comment sheet by an unidentifiable staff member:  "[Plaintiff]

7    was sent to his room from the classroom line-up. [W]hen told to go, he first asked why. [W]hen

8    told to go again, he stepped forward and said, 'I asked you a question' in an angry voice.  He did

9    go back, when told a third time."

10    4.2.46  The purported reason for solitary confinement does not specify whether this was

11    for a minor or major rule violation.

12    4.2.47  To the extent this incident arguably concerned a violation of the minor rule

13    against "verbal disrespect," "verbal argument/outburst," or otherwise, the staff member does not

14    explain how this incident was part of any "multiple, continuous minor violations or rule

15    violations that are a serious threat to the security of the Detention Facility," so as to warrant a

16    Room Lock per Chapter 7.3.III.M of the Policy Manual.

17    4.2.48  On April 1, 2015, Plaintiff was placed on overnight observation in the "Padded

18    Room" for the following reason noted on the Incident Report by the reviewing supervisor:

19    "[Plaintiff] was sitting in Room 5095 for being disruptive in A-Hall.  He continued carrying on

20    in the visiting room after shift change.  He refused verbal commands to be quiet.  When [staffer]

21    gave him commands he said fuck you [to the staffer]. Suck me off! Suck my dick! After a brief

22    period of verbal threats he simmered down enough to have [staffer] walk him to the pad (A-11).

23    He spent the rest of the night in observation."

24    4.2.49  Placement in the padded room was unwarranted.  Merely being "disruptive" per

25    Chapter 7.5.II.D of the Policy Manual does not qualify under the extreme circumstances reserved

26    to justify isolation of juveniles consistent with due process.

27

COMPLAINT - 14

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1     4.2.50  In addition, nowhere in this note does the supervisor identify any "imminent risk

2     to [oneself] or others" that would warrant the sanction of isolation in the Facility's Padded Room

3     per County policy.  *See* Policy Manual, chap. 7.5.II.D.

4     4.2.51  On April 16, 2015, Plaintiff was placed on 24-hour room confinement for the

5     following reason noted on the Comment Sheet by an unidentifiable staff member:  "During the

6     walk both [Plaintiff] and [another youth] were in their windows.  I told them both to stay out.

7     [The other youth] sat down and [Plaintiff] decided to argue and demand why.  I said cuz [sic]

8     you've been a problem all day [referring to two alleged instances of using profanity]. . . . Given

9     24 lock for arguing."

10     4.2.52  The purported reason for solitary confinement does not specify whether this was

11     for a minor or major rule violation.

12     4.2.53  To the extent this incident arguably concerned a violation of the minor rule

13     against "verbal argument/outburst" or some other minor infraction, the staff member does not

14     explain how this incident was part of any "multiple, continuous minor violations or rule

15     violations that are a serious threat to the security of the Detention Facility," so as to warrant a

16     Room Lock per Chapter 7.3.III.M of the Policy Manual.

17     4.2.54  On April 19, 2015, Plaintiff was placed on "24 hr. lock for making inappropriate

18     gestures toward female detainees walking by and lying about it," according to the Comment

19     Sheet completed by an unidentifiable staff member.

20     4.2.55  The purported reason for solitary confinement does not specify whether this was

21     for a minor or major rule violation.

22     4.2.56  To the extent this incident arguably concerned a violation of the minor rule

23     against "verbal disrespect," being "uncooperative with staff," or otherwise, the staff member

24     does not explain how this incident was part of any "multiple, continuous minor violations or rule

25     violations that are a serious threat to the security of the Detention Facility," so as to warrant a

26     Room Lock under Chapter 7.3.III.M of the Policy Manual.

27

COMPLAINT - 15

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1     4.2.57  On April 23, 2015, Plaintiff was "placed on 24 hr. lock for repeated misbehavior

2     in class – talking out, refusing to take notes, noise-making etc.," according to the Comment

3     Sheet completed by an unidentifiable staff member.

4          4.2.58  The purported reason for solitary confinement does not specify whether this was

5     for a minor or major rule violation.

6          4.2.59  To the extent this incident arguably concerned a violation of the minor rule

7     against "verbal disrespect," being "uncooperative with staff," or otherwise, the staff member

8     does not explain how this incident was part of any "multiple, continuous minor violations or rule

9     violations that are a serious threat to the security of the Detention Facility," so as to warrant a

10    Room Lock under Chapter 7.3.III.M of the Policy Manual.

11         4.2.60  On April 24, 2015, Plaintiff was placed on 24-hour room confinement for the

12    following reason noted on the Comment Sheet by an unidentifiable staff member:  "[P]laintiff is

13    on another 24 hr lock. . . . [He] told me he doesn't care and this is a fucking joke.  [Plaintiff] is

14    on . . . [24 hr lock] because of making some kind of cat call to [a female youth]."

15         4.2.61  The purported reason for solitary confinement does not specify whether this was

16    for a minor or major rule violation.

17         4.2.62  To the extent this incident arguably concerned a violation of the minor rule

18    against "verbal disrespect" or some other minor infraction, the staff member does not explain

19    how this incident was part of any "multiple, continuous minor violations or rule violations that

20    are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock per

21    Chapter 7.3.III.M of the Policy Manual.

22         4.2.63  On April 30, 2015, Plaintiff was placed on "24 hr. lock for yelling and acting out

23    during lunch.  Also for making gestures when told he was on lock," according to the Comment

24    Sheet completed by an unidentifiable staff member.

25         4.2.64  The purported reason for solitary confinement does not specify whether this was

26    for a minor or major rule violation.

27

COMPLAINT - 16

kc131401

4.2.65  To the extent this incident arguably concerned a violation of the minor rule against "verbal disrespect," "verbal argument/outburst," or otherwise, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock per Chapter 7.3.III.M of the Policy Manual.

4.2.66  On May 3, 2015, Plaintiff was placed on "24 hr. lock . . . for being a nuisance in b-wing and talking across the hall," according to the Comment Sheet completed by an unidentifiable staff member.

4.2.67  The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation, and doesn't appear to match the criteria for either category as set forth in Chapter 7.2 of the Policy Manual.

4.2.68  Even assuming there was some minor rule violation for "being uncooperative with staff" or otherwise, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.69  On May 9, 2015, Plaintiff was placed on "24 hr. lock for dissing on [another youth]," according to the Comment Sheet completed by an unidentifiable staff member.

4.2.70  The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation, and doesn't appear to match the criteria for either category as set forth in Chapter 7.2 of the Policy Manual.

4.2.71  Even assuming there was some minor rule violation, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.72  On May12, 2015, Plaintiff was placed on "24 hr. lock for consistent talking, making under his breath comments that can just barely be heard, hitting people with foam roller

COMPLAINT - 17

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1  & just generally trying to get away with misbehavior," according to the Comment Sheet

2  completed by an unidentifiable staff member.

3      4.2.73  The purported reason for solitary confinement does not specify whether this was

4  for a minor or major rule violation, and doesn't appear to match the criteria for either category as

5  set forth in Chapter 7.2 of the Policy Manual.

6      4.2.74  Even assuming there was some minor rule violation for "horseplay" or being

7  "uncooperative with staff," the staff member does not explain how this incident was part of any

8  "multiple, continuous minor violations or rule violations that are a serious threat to the security

9  of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy

10 Manual.

11     4.2.75  On May 17, 2015, Plaintiff was placed on "24 hr. lock" for leaving a "big glob of

12 toothpaste on [his] front door," according to the Comment Sheet completed by an unidentifiable

13 staff member who disbelieved Plaintiff's claim that it was an accident.

14     4.2.76  The purported reason for solitary confinement does not specify whether this was

15 for a minor or major rule violation, and doesn't appear to match the criteria for either category as

16 set forth in Chapter 7.2 of the Policy Manual.

17     4.2.77  Even assuming there was some minor rule violation for being "uncooperative

18 with staff" or otherwise, the staff member does not explain how this incident was part of any

19 "multiple, continuous minor violations or rule violations that are a serious threat to the security

20 of the Detention Facility," so as to warrant a Room Lock per Chapter 7.3.III.M of the Policy

21 Manual.

22     4.2.78  On June 7, 2015, Plaintiff was placed on "24 hr. lock for lying and arguing with

23 staff" after he attempted to participate in physical activity he purportedly was not authorized to

24 do, according to the Comment Sheet completed by an unidentifiable staff member.

25     4.2.79  The purported reason for solitary confinement does not specify whether this was

26 for a minor or major rule violation.

27

COMPLAINT - 18

kc131401

1      4.2.80  Even assuming there was some minor rule violation against "verbal

2 argument/outburst," for being "uncooperative with staff," or otherwise, the staff member does

3 not explain how this incident was part of any "multiple, continuous minor violations or rule

4 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

5 Room Lock under Chapter 7.3.III.M of the Policy Manual.

6      4.2.81  On June 11, 2015, Plaintiff was placed on "24 hr. lock" for "yelling from room

7 (profanities) to [another youth]," according to the Comment Sheet completed by an

8 unidentifiable staff member.

9      4.2.82  The purported reason for solitary confinement does not specify whether this was

10 for a minor or major rule violation.

11      4.2.83  Even assuming there was some minor rule violation for "verbal

12 argument/outburst," or being "uncooperative with staff," or otherwise, the staff member does not

13 explain how this incident was part of any "multiple, continuous minor violations or rule

14 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

15 Room Lock under Chapter 7.3.III.M of the Policy Manual.

16      4.2.84  On July 6, 2015, Plaintiff was placed on "24 hr. lock" for carrying candy in his

17 pocket, which was "contraband" according to the Comment Sheet completed by an

18 unidentifiable staff member.

19      4.2.85  The purported reason for solitary confinement does not specify whether this was

20 for a minor or major rule violation.

21      4.2.86  Even assuming there was some minor rule violation, the staff member does not

22 explain how this incident was part of any "multiple, continuous minor violations or rule

23 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

24 Room Lock under Chapter 7.3.III.M of the Policy Manual.

25      4.2.87  On July 7, 2015, Plaintiff was placed on "24 hr. lock" for making comments to a

26 "Mexican" youth and saying he "should go back to where he came from," according to the

27 Comment Sheet completed by an unidentifiable staff member.

COMPLAINT - 19

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1    4.2.88  The purported reason for solitary confinement does not specify whether this was

2    for a minor or major rule violation.

3    4.2.89  Even assuming there was some minor rule violation for "verbal disrespect," the

4    staff member does not explain how this incident was part of any "multiple, continuous minor

5    violations or rule violations that are a serious threat to the security of the Detention Facility," so

6    as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.  Even if this were

7    deemed a major infraction for "slurs pertaining to [r]ace" or "ethnicity," there was no claim of

8    imminent threat to others to justify use of isolation.

9    4.2.90  On July 12, 2015, Plaintiff was placed on 48-hour room confinement for the

10   following reason noted on the Comment Sheet by an unidentifiable staff member:  "[Plaintiff]

11   was at his window again, told me he doesn't care.  Gave 48 hr lock, he has very bad attitude."

12   4.2.91  The purported reason for solitary confinement does not specify whether this was

13   for a minor or major rule violation.

14   4.2.92  To the extent this incident arguably concerned a violation of the minor rule for

15   being "uncooperative with staff" or some other minor infraction, the staff member does not

16   explain how this incident was part of any "multiple, continuous minor violations or rule

17   violations that are a serious threat to the security of the Detention Facility," so as to warrant a

18   Room Lock per Chapter 7.3.III.M of the Policy Manual.

19   4.2.93  On July 21, 2015, Plaintiff was placed on 24-hour room confinement for the

20   following reason noted on the Comment Sheet by an unidentifiable staff member:  "Yelling

21   'bitch' from his room – not sure who it was directed at."

22   4.2.94  The purported reason for solitary confinement does not specify whether this was

23   for a minor or major rule violation.

24   4.2.95  To the extent this incident arguably concerned a violation of the minor rule for

25   being "verbal argument/outburst" or some other minor infraction, the staff member does not

26   explain how this incident was part of any "multiple, continuous minor violations or rule

27

COMPLAINT - 20

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1    violations that are a serious threat to the security of the Detention Facility," so as to warrant a

2    Room Lock per Chapter 7.3.III.M of the Policy Manual.

3          4.2.96  On August 23, 2015, Plaintiff was place in "23/1" room confinement by

4    Detention staffer, Georgia Peterson, without explanation.

5          4.2.97  The purported reason for solitary confinement does not specify whether this was

6    for a minor or major rule violation.

7          4.2.98  The staffer also does not document the basis for placing Plaintiff in isolation, as

8    required, or how this incident was part of any "multiple, continuous minor violations or rule

9    violations that are a serious threat to the security of the Detention Facility," so as to warrant a

10   Room Lock per Chapter 7.3.III.M of the Policy Manual.

11         4.2.99  On August 30, 2015, Plaintiff was placed on "24 hr. lock" for "talking about

12   robbing a 7-11, after being previously warned."  The Comment Sheet completed by

13   unidentifiable staff member does not elaborate on the alleged comment or what the warning

14   concerned.

15         4.2.100       The purported reason for solitary confinement does not specify whether

16   this was for a minor or major rule violation.

17         4.2.101       Even assuming there was some minor rule violation, the staff member

18   does not explain how this incident was part of any "multiple, continuous minor violations or rule

19   violations that are a serious threat to the security of the Detention Facility," so as to warrant a

20   Room Lock under Chapter 7.3.III.M of the Policy Manual.

21         4.2.102       On October 8, 2015, Plaintiff was placed on "23 + 1" room confinement

22   for "yelling from room, wanted to argue and deny it when he was confronted," according to the

23   Comment Sheet completed by an unidentifiable staff member.

24         4.2.103       The purported reason for solitary confinement does not specify whether

25   this was for a minor or major rule violation.

26         4.2.104       Even assuming there was some minor rule violation for "verbal

27   argument/outburst," being "uncooperative with staff," or otherwise, the staff member does not

COMPLAINT - 21

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1 explain how this incident was part of any "multiple, continuous minor violations or rule

2 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

3 Room Lock under Chapter 7.3.III.M of the Policy Manual.

4         4.2.105        On October 12, 2015, Plaintiff was placed on "23 + 1" room confinement

5 because he "hit [another youth] on the rear as he was walking by – w[ith] a foam roller. He was

6 goofing around, not angry, but automatic 23/1 for physical aggression." The Comment Sheet

7 completed by an unidentifiable staff member is nonsensical on its face because it equates what is

8 at most the minor violation of "horseplay" under Chapter 7.2.II.B.1(c) ("goofing around") with

9 "physical aggression."

10         4.2.106        The purported reason for solitary confinement does not specify whether

11 this was for a minor or major rule violation.

12         4.2.107        Even assuming there was some minor rule violation, the staff member

13 does not explain how this incident was part of any "multiple, continuous minor violations or rule

14 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

15 Room Lock under Chapter 7.3.III.M of the Policy Manual.

16         4.2.108        On October 17, 2015, Plaintiff was placed on "23 + 1" room confinement

17 for "writing on table and using spit to wipe it off with a sweatshirt," according to the Individual

18 Detention Report completed by an unidentifiable staff member.

19         4.2.109        The purported reason for solitary confinement does not specify whether

20 this was for a minor or major rule violation, and doesn't appear to match the criteria for either

21 category as set forth in Chapter 7.2 of the Policy Manual.

22         4.2.110        Even assuming there was some minor rule violation, the staff member

23 does not explain how this incident was part of any "multiple, continuous minor violations or rule

24 violations that are a serious threat to the security of the Detention Facility," so as to warrant a

25 Room Lock under Chapter 7.3.III.M of the Policy Manual.

26

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

kc131401

4.2.111        On October 19, 2015, Plaintiff was placed on "23 + 1" room confinement for "talking out of his room and cussing at other detainees," according to the Individual Detention Report completed by an unidentifiable staff member.

4.2.112        The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation.

4.2.113        Even assuming there was some minor rule violation for "verbal argument/outburst" or other minor infraction, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.114        On December 17, 2015, Plaintiff was placed on 24-hour room confinement for the following reason noted on the Individual Detention Report by an unidentifiable staff member:  "While I was reprimanding another detainee on the dayroom about kids calling each other nicknames 'white boy," [Plaintiff] interrupted me and told me it's okay for them to say that because they are white." The note continued that Plaintiff did not go back to his room when told, and that the staffer had Plaintiff remove all his property except his mattress. The staffer reported finally that Plaintiff then called her a "cunt."

4.2.115        The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation.

4.2.116        To the extent this incident arguably concerned a violation of the minor rule against "verbal disrespect," "verbal argument/outburst," being "uncooperative with staff," or otherwise, the staff member does not explain how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under Chapter 7.3.III.M of the Policy Manual.

4.2.117        On January 20, 2016, Plaintiff was placed in "23/1" room confinement by Detention staffer, Georgia Peterson, without explanation.

COMPLAINT - 23

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

1          4.2.118         The purported reason for solitary confinement does not specify whether

2   this was for a minor or major rule violation.  The staffer also does not document the basis for

3   placing Plaintiff in isolation, as required, or how this incident was part of any "multiple,

4   continuous minor violations or rule violations that are a serious threat to the security of the

5   Detention Facility," so as to warrant a Room Lock per Chapter 7.3.III.M of the Policy Manual.

6          4.2.119         On February 10, 2016, Plaintiff was placed on room confinement for 23

7   hours, with 1 hour out ("23/1"), "for receiving a letter that was passed to him from [another

8   youth]," according to the Individual Detention Report completed by an unidentifiable staff

9   member.

10          4.2.120         The purported reason for solitary confinement does not specify whether

11   this was for a minor or major rule violation.

12          4.2.121         To the extent this incident arguably concerned a violation of the minor

13   rule against "note passing" or some other minor infraction, the staff member does not explain

14   how this incident was part of any "multiple, continuous minor violations or rule violations that

15   are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock under

16   Chapter 7.3.III.M of the Policy Manual.

17          4.2.122         On February 13, 2016, Plaintiff was placed in on room confinement for 23

18   hours, with 1 hour out ("23/1") by Detention staffer, Georgia Peterson, without explanation.

19          4.2.123         The purported reason for solitary confinement does not specify whether

20   this was for a minor or major rule violation.

21          4.2.124         The staffer also does not document the basis for placing Plaintiff in

22   isolation, as required, or how this incident was part of any "multiple, continuous minor violations

23   or rule violations that are a serious threat to the security of the Detention Facility," so as to

24   warrant a Room Lock per Chapter 7.3.III.M of the Policy Manual.

25          4.2.125         On February 20, 2016, Plaintiff was placed in room confinement for 23

26   hours, with 1 hour out ("23/1") by Detention staffer, Gabrielle Wolcott, without explanation.

27

COMPLAINT - 24

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

4.2.126    The purported reason for solitary confinement does not specify whether this was for a minor or major rule violation. The staffer also does not document the basis for placing Plaintiff in isolation, as required, or how this incident was part of any "multiple, continuous minor violations or rule violations that are a serious threat to the security of the Detention Facility," so as to warrant a Room Lock per Chapter 7.3.III.M of the Policy Manual.

4.2.127    During the aforementioned instances of solitary confinement, Detention staff, especially during the weekend shift, often did not check on Plaintiff every 30 minutes as required.

4.2.128    During these periods of solitary confinement, Plaintiff was deprived of his liberty and his property interest in education, without adequate notice or opportunity to be heard.

4.2.129    Supervisors routinely review Incident Reports and Comment Sheets that discuss use of solitary confinement. County supervisors have failed to take action to correct misuse of solitary confinement or enforce the Policy Manual to curb excessive and unwarranted use of solitary confinement for minor rule violations.

4.2.130    County policymakers are deliberately indifferent to the pattern and practice of not enforcing the Policy Manual and the Policy Manual's authorization of solitary confinement under circumstances that violate the constitution.

**4.3**    **County officials subjected Plaintiff to isolation for over a month, eight (8) days of which were spent in the detention Facility's Padded Room.**

4.3.1    On February 21, 2016, an incident occurred at the Detention Facility where Plaintiff and several other juvenile detainees were yelling in their cells in the "B-Wing." Staff told the detainees as a group to be quiet and calm down. Plaintiff stopped yelling, but others did not. Plaintiff watched from his cell as staff removed some juveniles, but no staff member made contact with Plaintiff at that time, and he was left alone in his cell.

4.3.2    Staff members Ruth Milner and Jackie Ficele characterized the incident as "Banging & yelling in B-Wing & refusing to follow directives," and elaborated as follows in the Incident Report:

COMPLAINT - 25

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

B-wing was acting out by banging & yelling & trying to involve others to participate. They all were repeatedly being told by Jackie Ficele, the supervisor on shift to quit being disruptive. After being told to stop continuously and they wouldn't, she starting removing certain kids from the hall starting with [other youth #1] & [other youth #2]. Belongings were later removed from [other youth #3], [other youth #4], [Plaintiff], & [other youth #5]. Noise continued coming from [other youth #3]'s room so he was placed in a desk in the hall. [Other youth #1] was placed in the pad. [Other youth #5] continued to bang and yell & was told to come to door 3. When he came out of his room he said fuck this and returned to his room. [Other youth #6] & [other youth #7] went to his room & [other youth #7] resisted being cuffed & was taken down in the hall. Cuffs were placed on him and he was escorted to intake & cuffed to the bench. The cuffs were checked & loosened. [Other youth #3], [other youth #1], & [other youth #2] were all returned to their rooms before 10 p.m. [Other youth #4] was ok'd to go back to his room after Jackie F. talked to him @ 2220. [Other youth #5] was ok'd to go back to his room @ 2235. [Other youth #4] was placed on 23/ 1 & lowered his level to 1. [Other youth #1], [other youth #2], & [other youth #5] were placed on 23/1 then then was lowered to level 1. [Plaintiff] & [other youth #3] will remain on ALP [alternative level program] 1 till behavior improves.

4.3.3   On February 25, 2016, Defendant Gerald Murphy, the Detention Director, falsely claimed that Plaintiff "escalated" the incident and caused a "mini riot" with the others. In light of this incident, Mr. Murphy authorized that Plaintiff be confined in his room in "secured detention" and "remain isolated from his peers until he demonstrates and improves better social skills."

4.3.4   Mr. Murphy instructed, based on an incorrect factual basis, that "[w]hile in secure detention, he will follow all rules and expectations by staff and adhere to secure detentions [sic] zero tolerance with behavior he demonstrated on 2/21/2016. [Plaintiff] will refrain from using foul language and inciting weaker peers to mimic his behavior."

4.3.5   Plaintiff remained in this isolated "secured detention," with an hour per day in the recreation room, through March 18, 2016. Plaintiff was limited to having one book in his cell. Plaintiff was deprived of all contact with his parents during this period.

4.3.6   On several days, staff conducted a so-called "garage sale" where all items (including his mattress) were removed from his cell from 7:00 am to 11:00 pm, as additional punishment.

4.3.7   Plaintiff was also restricted to "sack lunches," which consisted of an apple, a container of milk, and a meat sandwich.

COMPLAINT - 26

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

4.3.8   After staff review of this isolated segregation, Mr. Murphy decided on March 18, 2016, that Plaintiff was to be moved from room confinement to the Padded Room, effective March 19, because Plaintiff had allegedly used "foul language when addressing his peers" and "demonstrated an unwillingness to make improvements in his behavior, along with . . . [r]efusing to follow staffs [sic] directives."  Mr. Murphy declined to provide a specific date on which this segregation and "special programming" would be reviewed.

4.3.9   Mr. Murphy's use of solitary confinement—by placing Plaintiff in the Padded Room—was carried out even though there were no safety risks that Plaintiff might harm himself or others.

4.3.10  Plaintiff remained isolated in the Padded Room for eight days.

4.3.11  The condition of the Padded Room was dirty, with food and blood splatters on the wall and floor. Instead of a toilet, there was a hole in the ground that was covered by a grate. The grate was fouled with other detainees' feces.  When Plaintiff requested permission to clean the grate, staff asked him if he would "eat" the feces.  When he said that he would not, staff laughed at him and said that in that case he would not be allowed to clean the grate.

4.3.12  During Plaintiff's isolation in the Padded Room, he received only peanut butter and jelly sandwiches, with staff expressly instructed that he was to receive "NO MILK OR SNACKS."

4.3.13  His diet was restricted in this manner despite the Policy Manual directive that he was not to be denied "regular meals," chap. 7.3.II.A.5, and the related policy that the Detention Facility "provides three nutritionally balanced meals daily that meet the guidelines of the National School Lunch Program." *See* Chap. 14.1.I.A.

4.3.14  During Plaintiff's isolation in the Padded Room, he was denied visitation with his parents.  He was prohibited from receiving any phone calls. The one designated hour of recreation ("rec. time") was allowed from 7am to 8am, alone in the Rec. Room.  Plaintiff was not permitted to have any books in his room, or educational materials, and was denied access to a radio.

COMPLAINT - 27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

4.3.15  Mr. Murphy ordered that "during waking hours [7:00 am to 11:00 pm], all items in his cell will be removed except his mattress."

4.3.16  During these periods of solitary confinement, Plaintiff was deprived of his liberty and his property interest in education, without notice or opportunity to be heard.

4.3.17  Mr. Murphy notified Defendant Greg Reynvaan of the extended period of solitary confinement and dietary restrictions.

4.3.18  As Juvenile Court Administrator, Mr. Reynvaan had the authority to countermand the corrective action, but did not.

4.3.19  On or about March 26, 2016, Plaintiff was released from the Padded Room, and relieved of the related sanctions under Mr. Murphy's corrective action and special programming.

4.3.20  On March 28, 2016, Judge Edwards confirmed that "a detainee at the juvenile facility was put into solitary confinement for an extended period of time and restricted of food and bedding," and reprimanded Mr. Reynvaan and Mr. Murphy that "this type of discipline is unacceptable and will not be tolerated." Judge Edwards suspended them each without pay for 7 days and 30 days, respectively.

4.3.21  Plaintiff was released from County custody on April 27, 2016.

4.3.22  In light of the frequency in which Plaintiff cycled through the Grays Harbor County juvenile justice system, and the County's aforementioned extensive record of subjecting Plaintiff to unwarranted and excessive use of solitary confinement to sanction ordinary teenage misbehavior, there is a reasonable risk that Plaintiff will again in the future be subject to the County's unconstitutional policies and practices.

**4.4     The County's policies, patterns, and practices caused Plaintiff to be placed solitary confinement, in violation of the Eighth and Fourteenth Amendments.**

4.4.1     Due process rights afforded to juveniles under the Fourteenth Amendment to the U.S. Constitution prohibit the use of solitary confinement or isolation except in extreme circumstances, such as to control violent offenders who present an imminent risk to themselves or others.

COMPLAINT - 28

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

4.4.2    Juveniles adjudicated delinquent have protections under the Eighth Amendment to the U.S. Constitution against cruel and unusual punishment and are treated categorically different from adults with criminal convictions.

4.4.3    The National Commission on Correctional Health Care (NCCHC) takes the following positions: (1) "The inherent restriction in meaningful social interaction and environmental stimulation and the lack of control adversely impact the health and welfare of all who are held in solitary confinement." (2) "Even those without a prior history of mental illness may experience a deterioration in mental health, experiencing anxiety, depression, anger, diminished impulse control, paranoia, visual and auditory hallucinations, cognitive disturbances, obsessive thoughts, paranoia, hypersensitivity to stimuli, posttraumautic stress disorder, self-harm, suicide, and/or psychosis." (3) "These consequences are especially harmful to juveniles whose brains are still developing and those with mental health problems."   For these reasons, the NCCHC recommends:  "Juveniles, mentally ill individuals, and pregnant women should be excluded from solitary confinement of any duration."

4.4.4    The federal government during the Obama administration ceased the practice of using solitary confinement for juveniles and for inmates serving time for low-level infractions. The federal government took this action because of data reflecting that the still-developing brains of juveniles face increased susceptibility to lasting damage from imposition of solitary confinement.

4.4.5    At least 21 states have prohibited the use of solitary confinement on juveniles for disciplinary purposes.

4.4.6    Consistent with these data and reforms, courts have recognized that "there is a broad consensus among the scientific and professional community that juveniles are psychologically more vulnerable than adults." *V.W. by & through Williams v. Conway*, No. 9:16-CV-1150, 2017 WL 696808, *19, -- F.Supp.3d -- (N.D.N.Y. Feb. 22, 2017) (granting preliminary injunction to stop use of solitary confinement of minors in New York county); *see also*, *e.g.*, *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 2467 (2012) (Youth "is a time of

COMPLAINT - 29

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

immaturity, irresponsibility, impetuousness[,] and recklessness. It is a moment and condition of life when a person may be most susceptible to influence and to psychological damage.") (internal quotation marks and citations omitted) (alteration in original); *Graham v. Florida*, 560 U.S. 48, 68 (2010) ("[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds."); *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (recognizing "comparative immaturity and irresponsibility of juveniles"); *State v. Houston-Sconiers*, No. 92605-1, 2017 WL 825654, -- P.3d --, (Wash. Mar. 2, 2017) ("Because 'children are different' under the Eighth Amendment and hence 'criminal procedure laws' must take the defendants' youthfulness into account, sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements when sentencing juveniles in adult court, regardless of how the juvenile got there.") (citing *Miller-Graham-Roper* trilogy).

    4.4.7    Despite these contemporary standards, and the widespread knowledge that solitary confinement can inflict serious harm on juveniles, the County's Policy Manual authorizes Detention Staff and Supervisors to place youth such as Plaintiff in "room confinement," "Room Lock," "24 hour lock," "23/1" confinement, or other forms of solitary confinement or isolation, for minor and major rule violations where public safety concerns are absent.

    4.4.8    To the extent the County's Policy Manual contains safeguards for the benefit of juvenile detainees, the County is deliberately indifferent to a pattern and practice of placing juveniles in solitary confinement or isolation without enforcement of such safeguards.

    4.4.9    By operation of County policy and the practice of not enforcing safeguards contained in the Policy Manual, the County allows the use of solitary confinement of juveniles as described herein that posed and continues to pose an unreasonable risk of serious damage to the health of its juvenile detainees including Plaintiff. The County's ongoing operation of its Detention Facility, with this policy and practice in place, is in deliberate indifference to these serious risks.

COMPLAINT - 30

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

4.4.10  The County's placement of Plaintiff in solitary confinement, as described herein, whether for punitive or administrative purposes, was unwarranted and contrary to the Eighth and Fourteenth Amendments.

4.4.11  The County's affirmative policy regarding its use of "cell confinement," "Room Lock," the "Padded Room," and other formulations for solitary confinement caused Plaintiff to suffer the constitutional deprivations described herein.

4.4.12  The pattern and practice of non-enforcement of safeguards for juveniles placed in solitary confinement set forth in the Policy Manual caused and exacerbated the constitutional deprivations described herein.

4.4.13  On account of Plaintiff's prolonged solitary confinement and restricted diet in February and March of 2016, and the prior repeated use of solitary confinement as described herein, Defendants have inflicted pain and suffering on Plaintiff.  Plaintiff is entitled to damages for this pain and suffering, emotional distress, and other general damages.

4.4.14  Defendants Reynvaan, Murphy, and County caused Plaintiff's injuries associated with the prolonged solitary confinement in February and March 2016.

4.4.15  Defendants Doe staffers and the County caused Plaintiff's injuries associated with prior instances of unconstitutional solitary confinement.

## V.  CAUSES OF ACTION

5.1.  By virtue of the facts set forth above, Defendants are liable for deprivation of civil rights of Plaintiff, M.D., guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, because Defendants have subjected Plaintiff to solitary confinement, on a routine basis pursuant to County policies and practices, for reasons that fall short of the extreme circumstances tolerated by substantive due process such as addressing public safety concerns.

5.2.  By virtue of the facts set forth above, Defendants are liable for deprivation of civil rights of Plaintiff, M.D., guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, because Defendants have subjected Plaintiff to solitary

COMPLAINT - 31

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

confinement and deprived him of educational materials and opportunities, on a routine basis

pursuant to County policies and practices, without notice or opportunity to be heard, in violation

of his procedural due process rights.

       5.3     By virtue of the facts set forth above, Defendants are liable for deprivation of civil

rights of Plaintiff, M.D., guaranteed by the Eighth Amendment to the Constitution of the United

States and 42 U.S.C. § 1983, because Defendants have subjected Plaintiff to solitary

confinement, on a routine basis pursuant to County policies and practices and otherwise under

circumstances described herein, which amounts to cruel and unusual punishment.

## VI.   **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests relief as follows:

       6.1.    Injunctive relief, including that Defendant Grays Harbor County be ordered to

cease placing Plaintiff and other juvenile detainees in solitary confinement as a routine method

of behavior management;

       6.2.    A declaration that Grays Harbor County's policies and practices as described

herein are unconstitutional;

       6.3.    Compensatory damages;

       6.4     Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and to the

extent otherwise permitted by law;

       6.5.    Such other relief as may be just and equitable.

//

//

//

//

//

//

//

COMPLAINT - 32

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kc131401

DATED this 14th day of March, 2017.

                              MacDONALD HOAGUE & BAYLESS

                              By: s/David J. Whedbee
                                  David J. Whedbee, WSBA #35977
                                  davidw@mhb.com

                              Cooperating Attorney for the ACLU of Washington
                              Attorneys for Plaintiffs


                                  Nancy Talner, WSBA No. 11196
                                  AMERICAN CIVIL LIBERTIES UNION OF
                                  WASHINGTON FOUNDATION
                                  901 Fifth Avenue, Suite 630
                                  Seattle, Washington 98164
                                  Telephone: (206) 624-2184
                                  Email: talner@aclu-wa.org

COMPLAINT - 33

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

kc131401